UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK FREY, LAUREN CANNO, J.C-F., a minor by
and through her parents, MARK FREY and LAUREN
CANNO, and I.C-F, a minor by and through her
parents, MARK FREY and LAUREN CANNO,

                                        Plaintiffs,

        -against-                                              Docket No. 18-CV-7088 (CS)

DAVID PEKOSKE, in his official capacity as
Administrator of the TRANSPORTATION
SECURITY ADMINISTRATION, KIRSTJEN
NIELSON, in her official capacity as Secretary of the
UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, the UNITED STATES OF AMERICA,
and John Doe Nos. 1-3, unidentified Transportation
Security Officers and Supervisory Transportation
Security Administration Officers,

                                        Defendants.

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' DISMISSAL MOTION

MICHAEL V. CARUSO, P.C.
Michael Vincent Caruso, MC0117
3871 Danbury Road
Brewster, New York 10509
mvcarusolaw@gmail.com
Telephone:  (845) 207-5452
Facsimile:  (845) 251-0002

*Attorneys for plaintiffs*

May 1, 2019

## EXPLANATION OF CITATION FORMS

The following citation forms are used in this memorandum:

° "Amended Complaint" or "Am. Compl." for reference to Plaintiff's Second Amended Complaint, sworn to on December 17, 2018, in this action.

° "DaSilva Decl." or "DaSilva Declaration" for reference to the Declaration of Joseph DaSilva, which was executed on March 27, 2019, and exhibits in support of the Dismissal Motion.

° "Dismissal Motion" for reference to defendants', the United States of America, David Pekoske, in his official capacity as Administrator of the Transportation Security Administration, and Kirstjen Nielsen, in xher official capacity as Secretary of Homeland Security (the "Government Defendants" or the "Government"), motion for an Order of the Court pursuant to F.R.C.P. §§ 12(b)(1) and (6) dismissing Plaintiffs' Second Amended Complaint.

° "FRCP" for reference to the Federal Rules of Civil Procedure.

° "Frey Aff." or "Frey Affidavit" for reference to the Affidavit of Mark Frey in Opposition to the Dismissal Motion, affirmed on May 1, 2019.

° "FTCA" for reference to the Federal Tort Claims Act as codified in 28 U.S.C. §§ 2671, *et seq.*

° "Memo." for reference to Defendants' Memorandum of Law in Support of the Dismissal Motion

° "DaSilva Decl." or "DaSilva Declaration for reference to the Declaration of Joseph DaSilva, which was executed on March 27, 2019, and exhibits in support of the Dismissal Motion.

° "SOP" or "SOPs" for reference to TSA Standard Operating Procedures as used throughout the Dismissal Motion.

## THE PARTIES

° "Frey" for reference to plaintiff Mark Frey.

° "Government" or "Government Defendants" for reference to the United States of America, David Pekoske, in his official capacity as Administrator of the Transportation Security Administration, and Kirstjen Nielsen, in her official capacity as Secretary of Homeland Security.

° "TSA" for reference to defendant David Pekoske, in his official capacity as Administrator of the Transportation Security Administration, and, in general, the United States Transportation Security Administration.

[intentionally left blank]

ii

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT…………………………………………………………..1

COUNTERSTATEMENT OF FACTS………………………………………………...3

STANDARD OF REVIEW………………………………………………………………3

ARGUMENT……………………………………………………………………………...3

POINT I     THE GOVERNMENT'S FAILURE TO IDENTIFY THE
            TIME AND MANNER OF IMPLEMENTING TSA STANDARD………………4

        A.  The Government Attached No
            SOPs To the Dismissal Motion……………………………………………4

        B.  The DaSilva Declaration is Extrinsic
            And Immaterial to the Dismissal Motion…………………………………………6

        C.  This Court Has Subject Matter Jurisdiction
            Over Plaintiffs' Claim For Declaratory Relief…………………………………..7

        D.  The Government Cannot Yet Establish as a
            Matter of Law That TSA's Alleged Conduct
            Constituted a Lawful Administrative Search……………………………………...9

POINT II    DETERMINING WHETHER TRANSPORTATION SECURITY
            OFFICERS FALL WITHIN THE SCOPE OF THE FTCA'S
            LAW ENFORCEMENT PROVISO IS PREMATURE…………………………12

POINT III   THE GOVERNMENT IS NEVERTHELESS UNABLE TO
            ESTABLISH AS A MATTER OF LAW THAT
            TRANSPORTATION SECURITY OFFICERS DO NOT
            FALL WITHIN THE FTCA'S LAW ENFORCEMENT PROVISO …………….13

        A.  TSOs Fall Within the FTCA Law Enforcement Proviso…………………………13

        B.  Screening and Searching Are
            Functional Equivalents Under the FTCA…………………………………...16

POINT IV    PLAINTIFFS' NEGLIGENCE COUNT
            IS NOT BARRED BY THE FTCA…………………………………………...18

POINT V     PLAINTIFFS' CLAIMS AGAINST THE
            DOE DEFENDANTS DO NOT VIOLATE FRCP 11…………………………..20

CONCLUSION…………………………………………………………………………..22

## TABLE OF AUTHORITIES

**Case**                                                                                              **Page**

*Abdullahi v. Pfizer, Inc.*,
    562 F.3d 163 (2d Cir. 2009)…………………………………………………………………3

*Armato v. Doe 1*,
    2012 WL 13027047 (D. Ariz. 2012)……………………………………………………16

*Ashcroft v. Al-Kidd*,
    131 S. Ct. 2074 (2011)…………………………………………………………………13

*Bivens v. Six Unknown Fed. Narcotics* Agents,
    403 U.S. 388 (1971)…………………………………………………………5-6, 20

*Brosseau v. Haugen*,
    543 U.S. 194 (2004)……………………………………………………………...13

*Bunch v. United States*,
    880 F.3d 938 (7th Cir. 2018)……………………………………………………...16

*Carter v. HealthPort Technologies, LLC*,
    822 F.3d 47 (2d Cir. 2016)……………………………………………………6-7

*Conyers v. Rossides*,
    558 F.3d 137 (2d Cir. 2009)……………………………………………………10

*Dorking Genetics v. U.S.*,
    76 F.3d 1261 (2d Cir. 1996)……………………………………………………18

*Durso v. Napolitano*,
    795 F.Supp.2d 63 (D.D.C. 2011)………………………………………………..8

*Exchange National Bank of Chicago v. Touche Ross & Co.*,
    544 F.2d 1126 (2d Cir.1976)……………………………………………………7

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)……………………………………………………………...13

*Hope v. Pelzer*,
    536 U.S. 730 (2002)……………………………………………………………...13

*Millbrook v. United States*,
    133 S. Ct. 1441 (2013)…………………………………………………………15

*Pellegrino v. United States,*
    896 F.3d 207 (3d Cir. 2018)……………………………………………………16

*Reedy v. Evanson,*
    615 F.3d 197 (3d Cir. 2010)……………………………………………………13

*Schneckloth v. Bustamonte,*
    412 U.S. 218 (1976)…………………………………………………………...10

*Scruggs v. Nielsen,*
    No. 18 CV 2109 (N.D. Ill., 2019)……………………………………………12

*Selevan v. New York Thruway Authority,*
    584 F.3d 82 (2d Cir.2009)………………………………………………………6

*Starr Int'l Co. v. Fed. Reserve Bank of N.Y.,*
    742 F.3d 37 (2d Cir. 2014)……………………………………………………3

*We Buy, Inc. v. Town of Clarkstown State of New York,*
    06 Civ. 1794 (S.D.N.Y. 2006)………………………………………………10

*United States v. Aukai,*
    497 F.3d, 955 (9th Cir. 2007)………………………………………………10

*Vanbrocklen v. United States,*
    08-CV-00272(M) (W.D.N.Y. 2011)…………………………………………11

*United States v. Marquez,*
    410 F.3d 612 (9th Cir. 2005……………………………………………1, 11

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,*
    517 F.3d 104 (2d Cir. 2008)…………………………………………………3

## **Rules**

Fed. R. Civ. P. 8(d)(2)…………………………………………………………18

Fed. R. Civ. P. 11………………………………………………………...20-21

Fed. R. Civ. P. 12(b)(1)………………………………………………….2, 6-7

Fed. R. Civ. P. 12(b)(6)…………………………………………………………6

**<u>Statutes</u>**

28 U.S.C. §1631………………………………………………………………………...9
28 U.S.C. § 2671 …………………………………………………………………..1-2

28 U.S.C § 2680(h)………………………………………………………………14-15, 18

49 U.S.C. § 101………………………………………………………………………1

49 U.S.C. § 114(r) …………………………………………………………………...5

49 U.S.C. § 44901……………………………………………………………………17

49 U.S.C. § 44901(a) ………………………………………………………………10

49 U.S.C. § 44901(g)(4) …………………………………………………………...17

49 U.S.C. § 46105……………………………………………………………………8

49 U.S.C. § 46110……………………………………………………………………7-9

49 U.S.C. § 46110(a) ………………………………………………………………..8

[intentionally left blank]

Plaintiffs respectfully submit this memorandum of law in opposition to the Dismissal Motion.

## PRELIMINARY STATEMENT

This case is not an assault on traditional notions of sovereign immunity. Nor does it seek to write-in newfound exemptions that Congress did not otherwise see fit to create. Rather, this case is about a dissonance between agency rulemaking and implementation of measures designed to keep air travelers safe, and individual liberties that were unlawfully invaded.

In this case, Plaintiffs paid much too high a price to engage in air travel while the Government, under the auspices of its mandate to make air travel safer, refuses to identify how it regulates air travel and security while towing the line dangerously close to trampling individual rights. The Government now claims that it had the requisite authority--through SOPs--to search Frey's body invasively. Yet, it refuses to shed any light on how, why, and to what extent it was and is legally authorized to do so. The Government now asks this Court to accept blindly that it has implemented and supervised SOPs at major airports--including Palm Beach International Airport (PBI) where Plaintiffs travelled--without providing any detail or disclosure of how it did so. The Government cannot have it both ways.

Now, the Government seeks refuge behind a broad umbra enabling it to perform administrative searches in a minimally intrusive, and thus reasonable, manner despite the Plaintiffs--in particular, Frey--suffering invasive assaults that are not reasonable under any construct. Something went terribly wrong either in the implementation, administration, or supervision of TSA employees and officers who battered Frey by forcibly and repeatedly touching

his genitalia using open hands and fingers, and who was publicly humiliated and within arm's length of his partner and minor daughters.

The Dismissal Motion has two critical deficiencies. First, without identifying or supplying the challenged SOPs, the Government assumes that their adoption and implementation preceded Plaintiffs' air travel via PBI in August, 2016, and thus lawfully enabled TSOs to perform enhanced pat-down procedures on Frey.[1] (DaSilva Decl., ¶¶ 16-17); (Memo. at 18-22). Without preliminary discovery or at least identification of these SOPs, it is impossible for this Court to determine whether Frey was lawfully search by TSOs when: (i) the Government has not identified or supplied the SOP(s) in question; and (ii) the date when TSA adopted and began implementing such directives has not been established with any degree of certainty.

This disclosure is critical to establishing the legality of the Government's pat-down and screening procedures implemented on Frey. For example, assuming that TSA adopted a final order authorizing the forcible touching of air travelers like Frey *months after* the events described in the Amended Complaint, then it would be clear that the Government had no legal authority for such a search. Conversely, a TSA order adopted *before* Frey's incident might lend support that such a search was more reasonable under the circumstances. However, the Dismissal Motion left this timing issue purposely vague.

Secondly, the Dismissal Motion argues that TSOs are neither law enforcement officers nor performing similar functions such that they would violate Fourth Amendment guarantees. As developed below, the plain text of the FTCA compels a different result.

Plaintiffs ask this Court to consider the entirety of Defendants' conduct and the enabling legislation--specifically, the plain and clear meanings of the statutory language--and not just the

---

[1] Oddly, the Government also neglected to describe using any modicum of detail how TSOs may legally administer pat-downs, enhanced pat-down, and passenger screenings.

overly-distilled version propounded in the Dismissal Motion.  Doing so compels only one conclusion:  the Dismissal Motion is premature and must be denied.

## COUNTERSTATEMENT OF FACTS

Plaintiffs do not dispute the Dismissal Motion's recitation of the operative facts.  To the extent Plaintiffs' account is divergent and to avoid redundancy, Plaintiffs respectfully refer the Court to the Amended Complaint.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must assume the truth of the Amended Complaint's well-pleaded factual allegations, construe them in the light most favorable to Plaintiffs, and draw all reasonable inferences in their favor. *See Abdullahi v. Pfizer, Inc.*, 562 F.3d 163,169 (2d Cir. 2009); *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). Such a motion must be denied if a complaint states any plausible claim to relief. *See Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 742 F.3d 37, 40 (2d Cir. 2014).

## ARGUMENT

The Dismissal Motion is fraught with inconsistency, and the Government's arguments rely on false premises related to TSA's legal authority to conduct administrative searches.  On dismissal motion, the court must only determine whether factual allegations are discernible within the four corners of the complaint that, when taken together, manifest a cause of action cognizable at law Each of Plaintiffs' causes of action, *prima facie*, satisfies this base pleading standard requiring only that they state a cause of action, and not whether they ultimately have a cause of action.  These factors, individually or collectively, justify denying the Dismissal Motion.


[intentionally left blank]

3

## POINT I

### THE GOVERNMENT'S FAILURE TO IDENTIFY THE
### TIME AND MANNER OF IMPLEMENTING TSA STANDARD
### OPERATING PROCEDURES IS FATAL TO THE DISMISSAL MOTION

The Government employs remarkably self-serving and circular reasoning to establish that the TSA promulgated and implemented enhanced pat-down procedures that were allegedly lawful at the time Frey was assaulted at PBI. And yet the Dismissal Motion asks the Court to take the Government solely at its word--without providing any specificity or the text of TSA' SOPs--that it promulgated and implemented new screening and search protocols *before* the occurrence of the events and injuries detailed in the Amended Complaint. This commands a huge, manifestly unreasonable leap of faith.

### A.     The Government Attached No
### SOPs To the Dismissal Motion

The Dismissal Motion relies, in part, on the DaSilva Declaration to establish how and why TSA SOPs were promulgated, and thus affected Plaintiffs' air travel. The DaSilva Declaration and the Dismissal Motion lack specificity regarding when TSA's SOPs implementing enhanced pat-downs became effective. This critically undermines the Dismissal Motion because without this information, the Government cannot establish whether TSA had the requisite legal authority in August, 2016 to search Frey's body in the manner alleged in the Amended Complaint.

The DaSilva Declaration vaguely identifies when an air traveler will be subject to a pat-down in connection with use of an AIT machine or walk-through metal detector. (DaSilva Decl., ¶¶ 14-16). DaSilva discusses that SOPs are revised and updated "as necessary—and often upon short notice—to account for necessary changes to security procedures in response to terrorist threats, threat assessments, and/or intelligence." (DaSilva Decl., ¶16). Plaintiffs do not dispute TSA's need to revisit and revise these protocols to respond to changing security threats.

4

However, the DaSilva Declaration does not identify or describe the elements of the pat-down procedure in effect in May, 2016.  Nor does he explain why they changed.  The declaration simply alleges that those procedures in effect were intended "to provide sufficient opportunity to detect nonmetallic threat items in sensitive areas as well as AIT" and, "[t]herefore, TSA adjusts the standard pat-down policy to use techniques that are informed by the latest intelligence." (DaSilva Decl., ¶ 16).  This declaration later concludes that the SOP in effect at PBI in August, 2016, which was allegedly updated on May 19, 2016, included "enhanced procedures for pat downs of individuals at screening checkpoints" that were neither identified nor described in any degree of detail.  (DaSilva Decl., ¶ 17).

In fact, the Dismissal Motion does not attach a single document identifying how pat-downs are performed in any degree of detail.  Neither the Government nor the Court can establish the date or manner by which pat-downs or enhanced pat-downs became a lawful exercise by TSA employees including TSOs and TSA law enforcement officers.  Absent this degree of detail, the Government cannot maintain that administrative searches and screening protocol applied to Plaintiffs in August, 2016 were, in fact, lawful.

The Dismissal Motion acknowledges the significance of its SOPs in allowing TSA to discharge its responsibilities, yet it does not attach them or summarize them claiming their nondisclosure is protected by 49 U.S.C. § 114(r) as Sensitive Security Information.  The Government cannot claim TSA SOPs are lawful orders and ask this Court to uphold their legality while simultaneously withholding them from both Plaintiffs and the Court.  This is counterintuitive.  Logic dictates that at the very least the relevant (and unidentified) SOPs must be disclosed for in-camera review to both Plaintiffs and the Court before any dispositive motion can

be decided.  Otherwise, this fact-issue precluded precludes the Court from deciding the Dismissal Motion.

**B.      The DaSilva Declaration is Extrinsic**
**And Immaterial to the Dismissal Motion**

It is well established that this Court may consider evidence outside the four corners of a pleading in deciding a motion pursuant to FRCP 12(b)(1) and 12(b)(6).  However, insofar as a motion pursuant to FRCP 12(b)(1) is facial--that is, based solely on the allegations of the complaint or the complaint and exhibits attached to it--the court's role is reserved to determining "whether the [p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56 (2d Cir. 2016), *citing*, *Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir.2009).

Here, the Dismissal Motion principally relies on the DaSilva Declaration in establishing that the unidentified and undisclosed administrative SOPs the Government are, in fact, "final", and thus undermine Plaintiffs' Constitutional Claims (First and Second Counts) and *Bivens* claim against the Doe Defendants (Fifth Count).  (Memo. Point II).  At least one point in the Dismissal Motion[2] relies on this purely legal, but false premise.  As such, the Government's challenge to these counts in the Amended Complaint are not fact-based or fact-centric, but depend entirely on the facial sufficiency of Plaintiffs' allegations as applied to the subject SOPs.  This branch of the Dismissal Motion clearly utilizes FRCP 12(b)(1) although the Government makes no such differentiation.

The DaSilva Declaration, however, is not based on personal knowledge of the operative facts set forth in the Amended Complaint.  Its representations do not clarify or enhance the

---

[2] Reference is made to Point II.B of the Memo. entitled "Plaintiffs Cannot Challenged the Constitutionality of TSA's Screening Procedures in District Court") (Memo. at 18-21).

Government's arguments that Plaintiffs allegedly fail to state a claim against the Government or Doe Defendants.  Accordingly, the DaSilva Declaration has no probative value to the Court or on the Dismissal Motion because it adds facts and issues (i.e. a vague advisory opinion) and evidence outside the four corners of the Amended Complaint.

The court in *Carter v. HealthPort Technologies*, *supra*, acknowledged that a dismissal opponent may "come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  822 F.3d at 57, *citing*, *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976).  Plaintiffs have done just that with the Frey Affidavit.

Using at least one major news article (Ex. B, Frey Aff.), Plaintiffs controvert the Government's contradictory claims regarding when the relevant SOPs were adopted, and as they may have applied to Frey.  (*See* Point I.A, *supra*).  This presents a "fact problem" on the Dismissal Motion because the Government and, consequently, the Court cannot deduce whether TSA's actions in searching and touching Frey in August, 2016 were lawful *at that time*.  That is, indeed, a central legal issue in this case.  The DaSilva Declaration only muddies this issue even further.  Thus, it cannot be considered in deciding the Dismissal Motion.

C.    **This Court Has Subject Matter Jurisdiction Over Plaintiffs' Claim For Declaratory Relief**

The Dismissal Motion claims, although if fails to prove, that the unidentified--and undisclosed--TSA SOPs which legalize enhanced pat-down procedures are "orders" within the purview of 49 U.S.C. § 46110, and which may only be challenged in the appropriate United States Court of Appeals.  (Memo. at 18-19).  Worse yet, the Government has failed to identify with any degree of certainty what date "marks the consummation of the agency's decision-making process"

when it adopts an SOP, thereby making it an "order." (Memo. at 20). At best, the Government's showing in this respect is contradictory. (Frey Aff., ¶¶ 29-33).[3]

And unlike the holding in *Durso v. Napolitano*, 795 F.Supp.2d 63 (D.D.C. 2011), upon which the Government now relies, the court in *Durso* at least had the benefit of *some review* of the relevant SOP (revised on September 17, 2010), which implemented the use of AIT machines to scan and image the bodies of air travelers. The Court in *Durso* could no doubt establish finality at least in large part because it had before it the text of the relevant SOP, or at least a summary of its provisions. Such is not the case here. The Government has furnished nothing to this end.

TSA has provided neither notice via publication of SOP revisions nor their underlying fact-finding to support them. The fact that SOPs appear to be kept secret and that no findings of fact are publicly available, or have been served, is contrary to the requirements of 49 U.S.C. § 46105. This further supports that SOPs should not be deemed "orders" within the meaning of 49 U.S.C. § 46105 as the Dismissal Motion contends.

The plain text of 49 U.S.C. § 46110 (entitled "Judicial Review"), Subsection (a) requires that petitions challenging such an order "must be filed not later than sixty (60) days after the order is issued." It logically follows that if Plaintiffs and members of the general public are unaware of the adoption of such SOPs, they cannot timely seek judicial review as the statute mandates. 49 U.S.C. § 46110(a). The Dismissal Motion represents the first time Plaintiffs were made aware that the SOPs in question were allegedly adopted in May, 2016 and not March, 2017 as major news sources reported. (Ex. B, Frey Aff.). In light of this, the Government's claim that this Court lacks

---

[3] On the one hand the government alleges that TSA SOPs were updated to include enhanced pat-down procedures on May 19, 2016, and thus in effect as of August, 2016 when Plaintiffs suffered harm alleged in the Amended Complaint. (DaSilva Decl., ¶ 16). On the other hand, information disseminated from TSA and made available to major news sources identifies March 2, 2017 as the date of implementation for the same, or very similar, SOPs. (Frey Aff., ¶¶ 32-33); (Ex. B, Frey Aff.).

subject matter jurisdiction over Plaintiffs declaratory relief claims ignores the futility of seeking judicial review of secretive and undisclosed TSA SOPs.

Because the Dismissal Motion vaguely touches on both the substance and specific implementation of any relevant SOPs, the Government cannot now ask this Court to rule that they are final orders without at least identifying them or first providing them.  This is placing the proverbial cart before the horse.  It is simply impossible for this Court to decide, much less identify, any TSA SOPs as being final or nonfinal--especially as applied to Plaintiffs--without the text of the SOPs before it for review.  Thus, dismissal is inappropriate.  However, should the Court determine that 49 U.S.C. § 46110 vests jurisdiction to challenge a TSA SOP in the appropriate United States Court of Appeals, then Plaintiffs respectfully request that this case be transferred pursuant to 28 U.S.C. § 1631.

**D.      The Government Cannot Yet Establish as a
         Matter of Law That TSA's Alleged Conduct
         Constituted a Lawful Administrative Search**

The Dismissal Motion goes to considerable lengths to paint a *per se* rule that TSA implementation of enhanced pat-downs and related SOPs are, by all means, reasonable and do not violate the Fourth Amendment.  This is wrong.

The so-called administrative searches that Frey was forced to endure at the hands of the Doe Defendants transcended any semblance of a consent-based, minimally intrusive search.  The Frey Affidavit makes it clear that air travelers could easily construe TSOs as being law enforcement officers based solely on their uniforms, presence, and roles they outwardly convey to the unwitting public.  (Frey Aff., ¶¶ 10-18).  It is, therefore, plausible and even reasonable to deduce that air travelers cannot fully comprehend, much less give informed consent, to whatever

search methods these officers (TSOs) then administer on air travelers who are not reasonably free to leave a sterile, TSA-controlled area.  (Frey Aff., ¶¶ 19-25).

The ATSA[4] "broadly expanded the government's control over, and active role in, aviation security" by creating the TSA.  *Conyers v. Rossides*, 558 F.3d 137 (2d Cir. 2009).  Among the TSA Administrator's duties are to "provide for the screening of all passengers and property . . . That will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation.  *Id.*, *citing*, 49 U.S.C. § 44901(a).  This authority, however, is not boundless.  And the operative facts of this case no doubt reflect the limits of administrative searches being pushed to their absolute brink, and beyond.

The reasonableness of an administrative search necessarily involves considering the "totality of all of the circumstances" regarding consent, and this is a question of fact.  *See We Buy, Inc. v. Town of Clarkstown State of New York*, 06 Civ. 1794 at *6 (S.D.N.Y. 2006), *citing*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1976) (finding that the "legitimacy of consent searches . . . cannot be resolved by any infallible touchstone."); *see also United States v. Aukai*, 497 F.3d, 955, 962 (9th Cir. 2007) (discussing that the "scope of such searches is not limitless").  The court in *Schneckloth v. Bustamonte* recognized that this determination, and the "very object of the inquiry", depends upon the "nature of a person's subjective understanding" of the search.  *Id.* at 230.

Here, the Court needs to look no further than the Amended Complaint to ascertain just how unreasonable the search of Frey' body and groin became at PBI.  (Am. Compl., ¶¶ 24-35).  There is no question that Frey's genitalia being repeatedly groped with an open palm within arm's reach of his minor daughters is the furthest thing possible from a "minimally invasive" administrative

---

[4] Reference is made to the Aviation and Transportation Security Act, which is codified under 49 U.S.C. §§ 101, *et seq.* (the "ATSA").

10

search.  Suffice to say neither Frey nor his minor daughters will trust a uniformed officer, much less a TSO, ever again after the incidents alleged in the Amended Complaint.  Surely, this result is not emblematic of a "minimally invasive" administrative search.

Making matters worse, Frey, no doubt like many air travelers, cannot distinguish between what the Government calls "screeners" (TSOs) and law enforcement officers.  (Frey Aff., ¶¶ 10-18).  Frey makes it very clear that what happened to him at PBI was unacceptable, unreasonable, and violated his fundamental rights in a humiliating manner before an audience of hundreds of strangers.  (Frey Aff., ¶¶ 19-25).  Nobody in their right mind would find this to be reasonable under such circumstances. However, it is inappropriate for the Government to presume the reasonable nature of this type of a search on a motion to dismiss, which is a highly subjective fact assessment.

Even assuming, *arguendo*, that the TSA's SOPs and the administrative searches of Frey are deemed an "airport screening search", a similar analytical framework applies.  Specifically, an "airport screening search is reasonable if: (1) it is no more extensive or intensive than necessary, in light of current technology, to detect weapons or explosives; (2) it is confined in good faith to that purpose; and (3) passengers may avoid the search by electing not to fly." *Vanbrocklen v. United States*, 08-CV-00272(M) (W.D.N.Y. 2011), *citing*, *United States v. Marquez*, 410 F.3d 612, 618 (9th Cir. 2005).  The court in *VanBrocklen* acknowledged that "even with the grave threat posed by airborne terrorist attacks, the vital and hallowed strictures of the Fourth Amendment still apply: *these searches must be reasonable to comport with the Constitution*."  *Id.* Again, it bears repeating that this reasonableness determination is highly fact-sensitive and must best reserved for the trier of fact, not a dismissal motion without the benefit of any discovery whatsoever

Accordingly, the Dismissal Motion must be denied at least until preliminary disclosure establishes when and how such SOPs were promulgated and then implemented and at which airports.  None of these facts have been conclusively, or even remotely, established.

### POINT II

### DETERMINING WHETHER TRANSPORTATION SECURITY OFFICERS FALL WITHIN THE SCOPE OF THE FTCA'S LAW ENFORCEMENT PROVISO IS PREMATURE

The Dismissal Motion argues that both the FTCA and the Transportation Act conclusively resolve that TSOs are only empowered to execute administrative searches and are prohibited from searches in furtherance of law enforcement objective.  (Memo. at 12).  Although Plaintiffs dispute this legal conclusion, it cannot be resolved on the limited facts propounded by the Government in the Dismissal Motion.

In *Scruggs v. Nielsen*, No. 18 CV 2109 (N.D. Ill., 2019), the court was faced with strikingly similar facts as those herein.  On a dismissal motion, the controversy in *Scruggs* related to whether TSOs constituted "officers who were "empowered by law to execute searches . . . for violations of Federal law."  Id. at *6.  The pleadings in *Scruggs* did not adequately differentiate between "agents," "officers," and "officials," sufficient to establish the title or authority of the alleged tortfeasors.  And consequently, the court denied as premature the government's dismissal motion in absence of such specificity in pleading.

Here, the rational employed in *Scruggs* dictates the same results albeit on different grounds. The Government's failure to identify or clarify the TSA employee, officer, or agent who forcibly touched Frey is the same lack of differentiation that doomed the dismissal motion in *Scruggs*.  As such, the remedy of dismissal here is premature.

<u>POINT III</u>

**THE GOVERNMENT IS NEVERTHELESS UNABLE TO ESTABLISH AS A MATTER OF LAW THAT TRANSPORTATION SECURITY OFFICERS <u>DO NOT FALL WITHIN THE FTCA'S LAW ENFORCEMENT PROVISO</u>**

The Dismissal Motion targets Plaintiff's constitutional claims principally relying on an overly strict construction of FTCA's law enforcement proviso.  Specifically, the Government argues that:  (i) TSOs are not law enforcement officers; and (ii) TSOs are unable to execute searches, seizures, and make arrests for violations of federal law.  (Memo. at 7-16).  In addition to elevating form over substance, these arguments rely on false premises that are called into question by the FTCA's plain language.

**A       TSOs Fall Within the FTCA Law Enforcement Proviso**

Government officials are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The determination of whether this standard is met "must be undertaken in light of the specific acts of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The ultimate question is whether the defendant 'had fair warning' that his conduct deprived his victim of a constitutional right." *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

To defeat a qualified immunity defense, a plaintiff must show that the conduct of each individual "[t]aken in the light most favorable to the party asserting the injury:  (i) violated a statutory or constitutional right; and (ii) that the right was 'clearly established' at the time of the challenged conduct."  *Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010), *citing*, *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2085 (2011).  Plaintiffs meet this standard.

Here, Frey makes it clear that in the eyes of the average air traveler--himself included--there is no appreciable difference between what the Government calls a "TSA screener" (TSO or a "Transportation Security Officer") and that of a law enforcement officer who would otherwise be empowered to conduct searches, make seizures, and arrests under the auspices of sovereign immunity.  (Frey Aff., ¶¶ 10-18).  TSOs wear uniforms clad with metal badges, epaulets, and all the trappings of law enforcement officers.  (Frey Aff., ¶¶ 11-15).  TSOs certainly convey the impression of command and authority as their employment manual instructs.  (Ex. A, Frey Aff.).

As discussed in detail in the Dismissal Motion, the FTCA's law enforcement proviso carves out an exception to sovereign immunity in certain contexts such as the imposition of intentional torts like battery.  Among those entitled to qualified immunity is an "investigative or law enforcement officer".  28 U.S.C. § 2680(h) entitled "Exceptions" provides that:

> "Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.  *For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law*." (emphasis supplied).

Many, if not all, of the major sources of decisional law cited in the Dismissal Motion to support that TSOs are allegedly "law enforcement officers" are distinguishable.  For example, the Government claims TSOs are not empowered to "search, seize, or arrest", and thus fall outside of the FTCA's law enforcement proviso.  (Memo. at 9-16).  Yet, the Dismissal Motion cites no

decisional law speaking directly as to whether TSOs are categorically not "law enforcement officers" under the FTCA.[5]

The Dismissal Motion conveniently overlooks the United States Supreme Court's decision in *Millbrook v. United States*, 133 S. Ct. 1441 (2013) holding that the FTCA's law enforcement proviso may be applied to torts committed by law enforcement officers notwithstanding whether the officer was engaged in investigative or law enforcement activity.  The Court in *Millbrook* found that "there is no basis for concluding that a law enforcement officer's intentional tort must occur in the course of executing a search, seizing evidence, or making an arrest in order to subject the United States to liability." *Id.* At 1445.

Of significance, the High Court observed that "[h]ad Congress intended to further narrow the scope of the proviso, Congress could have [added the language] acting in a law enforcement or investigative capacity."  133 S. Ct. at 1446.  Instead, the FTCA's law enforcement proviso qualifies the exemption for "acts or omissions of investigative *or* law enforcement officers of the United States Government."  28 U.S.C. § 2680(h); (emphasis supplied).  Here, the FTCA's plain language is disjunctive in its use of the word "or".  The Dismissal Motion mainly focuses on developed law surrounding "law enforcement officers" and neglects the harder-to-define "investigative officer" category cited in the statute.

The FTCA[6] does not define "investigative officer".  The Dismissal Motion makes no persuasive argument whatsoever for removing TSOs from consideration as "investigative officers" as the FTCA plainly identifies, but fails to define.  The most comprehensive treatment of the distinctions between law enforcement officers and investigative officers lies in a dissenting

---

[5] Much of the decisional law cited by the Dismissal Motion for this proposition is outside the unique realm of TSA and its TSOs (e.g., immigration officers, parole officers, EEOC agents, military base security personnel, federal corrections officers, et al.); (Memo. at 10).
[6] 28 U.S.C. § 2671.

opinion of the Third Circuit's decision in *Pellegrino v. United States*, 896 F.3d 207 (3d Cir. 2018). In analyzing how "investigative officer" is used in the FTCA's law enforcement proviso, the dissent in Pellegrino observed that the "Transportation Security Act empowers TSOs to conduct screenings for 'flights and flight segments originating in the United States'" and thereby making TSOs "empowered by law to perform searches." *Id.* at 239, *citing*, *Bunch v. United States*, 880 F.3d 938, 942 (7th Cir. 2018); *see Armato v. Doe 1*, No. CV-11-02462-PHX-ROS, 2012 WL 13027047 (D. Ariz. 2012) (finding that airport screenings are statutorily-authorized searches, and thus TSOs fall within the law enforcement proviso's scope).

Notwithstanding these legal distinctions, the Dismissal Motion presumes, but does not identify what type and class of TSA agent, employee, or officer searched Frey. Absent this clarity, the Dismissal Motion is premature.

**B.     Screening and Searching Are
          Functional Equivalents Under the FTCA**

The Dismissal Motion downplays and largely avoids analyzing the acts of screening and searching, which are the real focus of this case. Instead, the Government draws the Court's attention to a TSO's apparent classification as a federal "employee" versus an "officer" in attempting to remove TSOs from the FTCA's discretionary function exemption (the law enforcement proviso). (Memo. at 7-9). The Government then goes a step further arguing that despite their monikers as Transportation Security *Officers*, TSOs are nevertheless not "empowered by law" to effectuate searches, seizures, and arrests. (Memo. at 9-11). The exact opposite is borne out by the allegations of the Amended Complaint.

This line of reasoning, however, looks past the true nature of the constitutional violations at issue, those being the invasions of Frey's body and the Fourth Amendment guarantee to be secure in his person. Whether the actions are labeled "searching" or "screening", and despite

16

whether the person administering the violations are called "employees" or "Transportation

Security *Officers*", improperly elevates form over substance.

TSA allows a TSO to "conduct security screening of passengers, baggage and cargo at

airports to prevent any deadly or dangerous objects from being transported onto an aircraft."[7]  The

Transportation Act (specifically, 49 U.S.C. § 44901 entitled "Screening Passengers and Property")

does not define "the screening of passengers" and what these activities encompass.  Instead, this

subset of the Transportation Act only defines the "screening" of property with respect to "Air

Cargo on Passenger Aircraft."  (49 U.S.C. § 44901(g)(4)).[8]

Turning to the plain meaning of these words, Merriam Webster defines "screen", a transitive verb,

as follows:

> "to examine usually methodically in order to make a separation into
> different groups"; or
> "to select or eliminate by a screening process"; or
> "to test or examine for the presence of something."[9]

Merriam Webster defines a "search", also a transitive verb, as follows:

> "to look into or over carefully or thoroughly in an effort to find or discover
> something"; or
> "to look through or explore by inspecting possible places of concealment or
> investigating suspicious circumstances"; or
> "to examine for articles concealed on the person"; or
> "to uncover, find, or come to know by inquiry or scrutiny".[10]

Grammatically, "search" and "screen" are identical in that they both (i) express the same actions;

and (ii) are followed by nearly identical direct objects (that which receives the verb's action).  For

---

[7] Reference is made to the definition of "Transportation Security Officer" set forth on TSA's website, available at: https://www.tsa.gov/about/jobs-at-tsa/transportation-security-officer.

[8] "Screening" as it refers to "property" is defined in this subsection, in part, as "a physical examination or non-intrusive methods of assessing whether cargo poses a threat to transportation security. Methods of screening include x-ray systems, explosives detection systems, explosives trace detection, explosives detection canine teams certified by the Transportation Security Administration, or a physical search together with manifest verification."

[9] These definitions are available at:  https://www.merriam-webster.com/dictionary/search.

[10] These definitions are available at:  https://www.merriam-webster.com/dictionary/screen.

example, several definitions contain the same action (i.e. "to examine" or "to look into" or "to look through") and must be followed by the same direct object (e.g. a person's body or property). Thus, "search" and "screen" function identically as action verbs.

The only arguable difference in the usage of "search" and "screen" could lie in the degree or severity of these actions. And even this is a trivial distinction because the definitions of both verbs clearly support that their actions are intended to yield either the "separation", "selection", or "discovery" of constituent parts of a whole, and thus the end result will be the same despite the verb that is employed.

Applied to the facts of this case, it matters not whether a TSO is labeled an employee or an officer as is the case. Whether by design or legislative fiat, TSOs are clearly performing invasive searches of the body as reflected in the Amended Complaint, and thus implicating Fourth Amendment restrictions. This is the very essence of this case, and it drives home the need for fact development and discovery before blindly accepting the Government's admittedly skewed version of this constitutional landscape.

## POINT IV

## PLAINTIFFS' NEGLIGENCE COUNT
## IS NOT BARRED BY THE FTCA

Plaintiffs' Third Count (Battery) and Fourth Count (Negligence) in the Amended Complaint represent different theories of liability pled in the alternative. This is common practice in both state and federal courts under these tort doctrines. FRCP 8(d)(2) clearly allows for such alternative pleading.

The Court, "in determining the applicability of the Section(s) 2680(h) exception", must now "look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Dorking Genetics v. U.S.*, 76 F.3d 1261, 1264, 1265 (2d Cir. 1996).

18

The Court must therefore analyze whether (i) the SOPs allegedly authorizing enhanced pat-downs were legal in August, 2016, (ii) whether the Government and Doe Defendants breached a duty owed to Frey, and (iii) whether Plaintiffs suffered injury as a result of these actions.

Plaintiffs are not attempting to circumvent sovereign immunity by "clothing their intentional tort claim in the garb of negligence" as the Government Contends.  (Memo. at 17).  Plaintiffs state independent claims, ones that do not rely inextricably upon the other.  Defendants' intentions when touching Frey are unknown at this early stage in the action.  The parties will only reveal such intentions, or any lack thereof, by engaging in discovery and developing the facts.  It is certainly plausible that one or more of the Doe Defendants manifested in intention to assault or batter Frey.

It is equally possible that they did not.  But the Court cannot presuppose either scenario exists, or which is more likely, at this pleading stage.  This is especially true as the Dismissal Motion attaches no documentary evidence or sworn statements identifying any of the Doe Defendants, or clarifying their intentions as applied to the operative facts.

At this preliminary stage, there is no way to rule out that the Doe Defendants, who forcibly touched Frey, did so intentionally or perversely driven by violent, sexual, or other pathological impulses.  Such a finding would certainly compel a different result than that which the Dismissal Motion *assumes to be true* without any evidence whatsoever from the Doe Defendants, who actually touched Frey.[11]  As such, this issue being in dispute does not justify the drastic remedy of dismissal.

---

[11] Despite ultimately finding the subject TSA screening as being reasonable, the Court in *United States v. Marquez*, 410 F.3d 612, 618 (9th Cir. 2005) observed that establishing a record of "improper motives" in the "record below" would have "perhaps" compelled a different outcome.  This further supports denying the Dismissal Motion to allow Plaintiffs to obtain discovery from the Doe Defendants vis-à-vis their motives in assaulting Frey.

## POINT V

## PLAINTIFFS' CLAIMS AGAINST THE
## DOE DEFENDANTS DO NOT VIOLATE FRCP 11

As discussed herein, the Government has failed to establish with any degree of accuracy or elaboration when and how the practice of enhanced pat-downs changed relative to the operative facts; specifically, the timing and rollout of new TSA SOPs.  This, in turn, is fatal to the Government's argument that enhanced pat-downs are within the bounds of an air traveler's Fourth and Fifth Amendment Rights.  (Memo. at 24-25).  In light of this, Plaintiffs have alleged that the Doe Defendants exceeded the parameters of any SOPs then in effect as of August, 2016 when Plaintiffs suffered injury detailed in the Amended Complaint.  The Government has failed to identify what elements of the pat-down procedure implemented on Plaintiff were, or were not, proper within the SOPs then in effect.  The Government simply concludes the protocols were lawful.  (*See* DaSilva Decl., generally).  This is simply insufficient.

In light of the Government's unwillingness to identify how and what comprises lawful pat-down procedure in August, 2016, Plaintiffs' constitutional torts are properly pleaded under the recognized standards set forth in *Bivens v. Six Unknown Fed. Narcotics* Agents, 403 U.S. 388 (1971).  As far as Plaintiffs can tell--and without the benefit of even preliminary discovery in this action--the pat-down procedures implemented on Frey were unlawful, invasive, and otherwise outside the scope of a minimally intrusive administrative search that the Government cites but fails to describe in detail.

FRCP 11 provides, in pertinent part, that:

> "to the best of the signer's knowledge, information, and belief formed after
> reasonable inquiry it [the pleading] is swell grounded in fact and is
> warranted by existing law or a good faith argument for the extension,
> modification, or reversal of existing law, and that it is not interposed for any

> improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

Plaintiffs, through counsel, reviewed and authorized the Amended Complaint to be filed as he reflected a fair and accurate recitation of both the facts and operative law in this action. The allegations are well grounded in fact and supported by at least one disinterested witness identified in the pleading.[12]

Even assuming, *arguendo*, that existing law does not *prima facie* support plaintiff's claims, there is abundant support for a good faith argument to extend, modify, or reverse existing law that caused plaintiffs to suffer traumatic and invasive physical and emotional harm by what the government calls the standard implementation of reasonable administrative procedures. Put simply, either the administrative protocols are ineffective and do not protect individual rights, or their implementation in this instance went horribly wrong. Either way, there is ample reason to believe that these claims were interposed in good faith and with a proper purpose in mind; that being to protect plaintiffs individual rights and those of other air travelers who may be similarly harmed by the government attempting, but failing, the balance compelling administrative needs against individual liberties that were trampled in this case.

As such, Plaintiffs' claims against the Doe Defendants are properly stated within the ambit of FRCP 11. They are not frivolous by any stretch of the imagination.

[intentionally left blank]

---

[12] *See* Amended Complaint, ¶ 48.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny the Dismissal Motion.

Dated: Brewster, New York
       May 1, 2019

Respectfully submitted,

By: ___/s/ *Michael V. Caruso*_____
Michael V. Caruso (MC0117)
Michael V. Caruso, P.C.
3871 Danbury Road
Brewster, New York 10509
mvcarusolaw@gmail.com
Tel:  (845) 207-5452
Fax: (845) 251-0002

*Attorneys for Plaintiffs*